IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | CASE NO. BK06-81461-TJM |
| ROBERT MICHAEL WYKOFF and ) | A06-8129-TJM |
| KIMBERLY ANN WYKOFF, ) | |
| ) | CH. 7 |
| Debtor(s). ) | |
| GREAT WESTERN BANK, a South Dakota ) | |
| Banking Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| KIMBERLY ANN WYKOFF, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Trial was held in Omaha, Nebraska, on November 29, 2007, regarding the complaint filed herein. Steven Woolley appeared for the plaintiff and David Hicks appeared for the defendant. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

The defendant was the sole shareholder, officer and director of Harding, Inc. ("Harding"). Harding operated a Honey Baked Ham store at 84th and Dodge Streets in Omaha, Nebraska. As part of the franchise agreement executed by defendant on behalf of Harding, Inc., she was required to open a second store in the Omaha area within a certain amount of time after opening the first store.

Defendant had a banking relationship with Great Western Bank, the plaintiff. When it came time to open the new store, she arranged for a line of credit represented by a promissory note executed by her on behalf of Harding in favor of the bank. Separately, she personally guaranteed the note.

The agreement with the bank required Harding, Inc., before it could draw any of the funds, to specifically itemize for the bank the purpose of the draw. After review of the written request and documentation, the bank advanced funds.

In October of 2004, the debtor presented to the bank, on behalf of Harding, a written request for an advance of $56,681. Debtor provided to the bank a list of restaurant equipment that she proposed to purchase from Todd Hedlund for that amount. She informed the bank that she had already made a $12,500 deposit or down payment on the total purchase price. She requested the total amount of $56,681 be advanced directly to her. The bank declined the opportunity to advance the total amount to her, deposited $12,500 into the Harding account, and delivered to debtor $44,181 by cashier's check payable to Todd Hedlund.

Within days after receiving the cashier's check, debtor obtained an endorsement of the cashier's check from Todd Hedlund and then deposited the cashier's check in her personal bank account, not the bank account of Harding.

The bank was not aware that the cashier's check was not actually used for the purchase of equipment. The actual equipment purchased for $12,500 was a small portion of the equipment listed on the documentation provided to the bank in support of the advance of the $56,681.

Although the second store was opened, it was not successful and eventually was taken over by the franchisor and sold to another party. The first store was closed.

The bank liquidated the collateral that it could find and then sued the debtor, Harding, and another of debtor's businesses which had also guaranteed some or all of the debt obligations to the bank. Prior to judgment being entered in the state court lawsuit, the debtor filed this Chapter 7 case with her husband. The state court case eventually ended in a judgment against the other two defendants. The bank then brought this adversary proceeding to obtain a determination of non-dischargeability with regard to the $44,181. It is the position of the bank that it should prevail under 11 U.S.C. § 523(a)(2)(A) or § 523(a)(4) or § 523(a)(6).

The Bankruptcy Code prohibits debtors from discharging debts "incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an honest but unfortunate debtor." Cohen v. de la Cruz, 523 U.S. 213, 217 (1998) (internal citation omitted).

To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. Universal Bank, N.A. v. Grause (In re Grause), 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing Thul v. Ophaug (In re Ophaug), 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by Field v. Mans, 516 U.S. 59 (1995)). In Field v. Mans, the Supreme Court held that § 523(a)(2)(A) requires justifiable reliance, in which "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. at 71 (citing the Restatement (Second) of Torts § 545A cmt. b (1976)).

When assessing the debtor's knowledge that the representation was false, the court must consider the debtor's knowledge and experience. Merchants Nat'l Bank v. Moen (In re Moen), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (citing In re Duggan, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). The knowledge requirement can be satisfied with a finding that the debtor recklessly disregarded the truth by making the false representation under circumstances where he should have known it to be false. Id.

"The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." Moen, 238 B.R. at 791 (quoting Moodie-Yannotti v. Swan (In re Swan), 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." Id. (quoting Caspers v. Van Horne

(In re Van Horne), 823 F.2d 1285, 1287 (8th Cir. 1987)). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. Id. (quoting Federal Trade Comm'n v. Duggan (In re Duggan), 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)).

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. To prevail, a plaintiff must establish by a preponderance of the evidence that a fiduciary relationship existed between the parties and that the defendant committed defalcation in the course of that fiduciary relationship. Int'l Fid. Ins. Co. v. Fox (In re Fox), 357 B.R. 770, 778 (Bankr. E.D. Ark. 2006).

Whether a relationship is a fiduciary relationship within the meaning of § 523(a)(4) is a question of federal law. Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane), 124 F.3d 978, 984 (8th Cir. 1997), cert. denied, 522 U.S. 1112 (1998). "Acting in a fiduciary capacity" is limited in application to technical or express trusts, not to trusts that may be imposed because of the alleged act of wrongdoing from which the underlying indebtedness arose. See Hunter v. Philpott, 373 F.3d 873 (8th Cir. 2004) ("fiduciary" used in a strict and narrow sense in § 523(a)(4), and fiduciary status must pre-date the debt); Barclays Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 878-79 (8th Cir. 1985) (for purposes of § 523(a)(4) fraud or defalcation exception, fiduciary capacity must arise from express trust, not constructive trust or mere contractual relationship).

According to the caselaw in the Eighth Circuit, a bankruptcy court can find a "defalcation" under 11 U.S.C. § 523(a)(4) without evidence of intentional fraud or other intentional wrongdoing. The Eighth Circuit Court of Appeals in the case of Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane), 124 F.3d 978 (8th Cir. 1997), cert. denied, 522 U.S. 1112 (1998), stated:

> Defalcation is defined as the "misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds." Under section 523(a)(4), defalcation "includes the innocent default of a fiduciary who fails to account fully for money received." . . . An individual may be liable for defalcation without having the intent to defraud.

Cochrane, 124 F.3d at 984 (quoting Lewis v. Scott, 97 F.3d 1182, 1186 (9th Cir. 1996)).

Section 523(a)(4) also excepts from discharge debts arising from embezzlement or larceny. "Embezzlement" is the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come. Belfry v. Cardozo (In re Belfry), 862 F.2d 661, 662 (8th Cir. 1988). The plaintiff must establish that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used. Id. To show embezzlement, the creditor has to prove that it entrusted its property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud. Bankers Trust Co. v. Hoover (In re Hoover), 301 B.R. 38, 52 (Bankr. S.D. Iowa 2003).

"Larceny" is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without consent of the owner. Rech v. Burgess (In re Burgess), 106 B.R. 612, 622 (Bankr. D. Neb. 1989). "The essential difference between larceny and embezzlement is the manner in which property comes into the possession of the person charged. Embezzlement involves a lawful or authorized possession. In the case of larceny,

however, the original taking and possession is unlawful." Id.

A debt may be excepted from the discharge of debts granted under 11 U.S.C. § 727 if it is "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To except a debt from discharge under that section, a plaintiff must establish, by a preponderance of the evidence, that the debt arises from an injury that is both willful and malicious. In this context, the term "willful" means that the injury, not merely the act leading to the injury, must be deliberate or intentional; and a "malicious" injury is one that is targeted at the creditor, in the sense that the conduct is certain or almost certain to cause financial harm. Jamrose v. D'Amato (In re D'Amato), 341 B.R. 1, 4-5 (B.A.P. 8th Cir. 2006). The injury must have arisen from an intentional tort. Osborne v. Stage (In re Stage), 321 B.R. 486, 492 (B.A.P. 8th Cir. 2005) (citing Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998)). In a practical sense,

> if the debtor was aware of the plaintiff-creditor's right under law to be free of the invasive conduct of others (conduct of the sort redressed by the law on the underlying tort) and nonetheless proceeded to act to effect the invasion with particular reference to the plaintiff, willfulness is established. If in so doing the debtor intended to bring about a loss in fact that would be detrimental to the plaintiff, whether specific sort of loss the plaintiff actually suffered or not, malice is established.

KYMN, Inc. v. Langeslag (In re Langeslag), 366 B.R. 51, 59 (Bankr. D. Minn. 2007).

The debtor has had more than one explanation for why the cashier's check ended up being deposited in her personal account. The latest explanation, used at trial, is that the franchisor had the absolute right to determine what equipment could be used in the business. Between the date she received the $44,181 cashier's check, October 19, 2004, and the time she deposited it in her personal account, approximately a week later, the franchisor representatives had viewed the equipment and determined that the only portion of it that was allowable was that which had been purchased for $12,500. She then explained that the proceeds of the cashier's check were deposited into her personal account just because, at that time, she was busy with personal and business matters and was not paying close attention to the fact that she was commingling business funds with her personal funds. Further, she explained that she had commingled business funds with her personal funds on a regular basis and had paid business expenses for the first store, as well as business expenses for the second store, from her personal account on occasion, and from her separate business account for City Wide Insurance.

Her testimony may have been credible had Todd Hedlund not testified. Mr. Hedlund, a doctor of chiropractic, had, in 2003, opened a franchise restaurant in Omaha. The business was not successful and was closed in early 2004. The restaurant equipment in the leased premises was secured by a lien held by the Howard County Bank. He needed to sell the equipment in order to pay down his debt with the bank. Rather than supporting the testimony of the debtor with regard to the endorsement of the cashier's check and re-delivery to the debtor, Dr. Hedlund specifically contradicted the debtor's testimony. He testified that the only equipment that he had agreed to sell to the debtor was that list of equipment released from the lien by the Howard County Bank and purchased for $12,500. He was emphatic that there was never an agreement to sell to the debtor all of the equipment listed on the documentation the debtor presented to the bank and that there was never an agreement to sell equipment for $56,681.

Considering all of the documentary evidence presented by the bank, and weighing the testimony of the debtor versus the testimony of Dr. Hedlund, I conclude that there never was an agreement between the debtor and Dr. Hedlund with regard to any equipment being purchased for more than $12,500.  Therefore, I find that the debt of $44,181, plus reasonable attorney fees incurred by the bank to collect this debt from the debtor and to obtain the determination of non-dischargeability is a total amount that shall not be discharged because it represents money obtained by a false representation. It therefore falls under 11U.S.C.§523(a)(2)(A).

While the bank alleged that the debt should be excepted from discharge under §§ 523(a)(4) and (a)(6), the evidence does not support a finding of non-dischargeability under either of those subsections. There is no indication that the debtor embezzled or misappropriated funds, nor was she acting in a fiduciary capacity in the sense used by § 523(a)(4) of the Bankruptcy Code. There also is no evidence that her conduct caused a willful and malicious injury to the bank as contemplated by § 523(a)(6).

In this case, the borrower on the promissory note was Harding, Inc., not the debtor individually. However, it is clearly established, in Nebraska and elsewhere, that a director or officer of a corporation is individually liable for fraudulent acts or false representations of her own or in which she participates, even though her actions may be in furtherance of the corporate business. Huffman v. Poore, 6 Neb. App. 43, 569 N.W.2d 549, 558 (1997) (citing 18B Am. Jur. 2d *Corporations* § 1882 at 730-32 (1985)).

IT IS ORDERED: The bank may supplement the record with an itemized statement of its attorney fees on or before January 4, 2008.  Counsel for the debtor shall file any objections with regard to the amount on or before January 15, 2008.  Thereafter, a non-dischargeable money judgment will be entered for the amount of the cashier's check plus the amount of reasonable attorney fees found by the court.  This memorandum is not a final appealable order. Entry of the judgment will constitute a final order for appeal purposes.

DATED:      December 19, 2007

BY THE COURT:

/s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
   *Steven Woolley
   David Hicks
   Thomas D. Stalnaker
   U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.